SCOTTISH, &c., COMPANY v. MIXSON.

MIXSON v. SCOTTISH, &c., COMPANY.

1. MARRIED WOMEN—MORTGAGE.—The act of 1887 (19 Stat., 819), "to declare the law relating to the separate estate of married women," having provided that all mortgages executed by a married woman, affecting her separate estate, shall be effectual to charge such estate whenever the intention so to charge is declared in such mortgage, the right of the married woman to make a valid mortgage of her separate property was thereby made to depend only upon her intention, and such intention was conclusively manifested when so declared. A mortgage made by a married woman while this act was in force, containing an expression of her intention to charge, in the words of the statute, is binding upon her, without regard to whether it was given for her debt or for the debt of her husband.

2. FINDINGS OF FACT by the Circuit Judge, supported by testimony, approved.

Before WALLACE, J., Aiken, October, 1891.

Action by the Scottish American Mortgage Company, Lim-

ited, against Ella Mixson, to foreclose a mortgage, and by Ella Mixson against the same company, to enjoin a sale under a power contained in another mortgage. The opinion sufficiently states the first case. In the second case the Circuit decree was as follows:

This case came on to be heard before me at the fall term, 1891, of the Court of Common Pleas for Aiken County, upon the pleadings and the evidence as reported by the master.

I find, as matter of fact, from the pleadings and evidence, that the plaintiff has brought this action against the defendants, to enjoin them from selling her tract of land under a power contained in a mortgage, executed by the plaintiff, Sinia A. Wise, and F. M. Mixson, to the defendant company on the 1st day of March, 1884, to secure the payment of a note for a thousand dollars, executed by said parties to the said defendant on the same day that the mortgage was executed.

The plaintiff alleges in the complaint, that she is the owner of the tract of land described in said mortgage; that Frank M. Mixson is her husband, and that at his request, and as his surety, and for the purpose of raising money for his benefit, and not for herself, she executed the mortgage above referred to. The plaintiff further alleges in her complaint, that she received none of the money which was loaned upon said note and mortgage, nor that any of said money was used for her benefit, nor was said contract made as to her separate estate, and she, therefore, claims that said mortgage is null and void. She also alleges that the defendant company, and John B. Palmer, it's attorney in fact, had advertised her land for sale under the power contained in said mortgage, and she prays judgment that the sale be enjoined, and the said mortgage be declared null and void, and cancelled upon the record. Upon this complaint a temporary injunction was granted, restraining said sale. The defendant answered, denying that the plaintiff was surety upon said debt, but that the debt was contracted by her for her own benefit, and with reference to her separate estate, and asking judgment of foreclosure.

By consent, it was referred to the master of this county to take and report the evidence. The master has filed his report

28—38

with the testimony.    I find therefrom that the plaintiff on the day mentioned executed her note for one thousand dollars to the defendant company, which became due on the first day of November, 1889, with interest on said note from its date, at the rate of ten per cent. per annum, payable on the first day of May and November in each year, and if the interest was not paid at maturity it was to bear interest at the same rate thereafter; that the plaintiff did, on the first day of March, 1884, execute to the defendant company a mortgage of the premises described in the complaint for the purpose of securing the payment of said note; that the said note and mortgage were also executed by Sinia A. Wise, the mother, and Frank M. Mixson, her husband; that the plaintiff was the principal debtor on said note, and her mother and husband were her sureties; that the plaintiff borrowed the money upon the representations contained in her written application, and her representations made to Geo. C. Smith, and actually received a part of the money, and a part was applied in payment of a mortgage which she regarded, and, as the evidence shows, was regarded by the defendants, as a lien upon her land, and which she had represented as a lien.

The money having been borrowed by the plaintiff, it cannot affect the defendant that a part of it may have been used by her husband.    See *Building and Loan Association* v. *Jones*, 32 S. C., 308.    The defendant company had no notice of the use intended to be made of the money other than that represented by the plaintiff, and the plaintiff is, therefore, estopped from now denying that she borrowed the money.    The plaintiff claims that Frank M. Mixson was not her agent in this transaction, but the note and mortgage were carried to her by her husband, and she admits that she executed the same, and they were then carried by her husband and delivered to the attorney of the defendant company, who then turned over the money to him for the plaintiff.    The circumstances and facts fully prove the agency of Frank M. Mixson.    The facts in this case are stronger than the facts in the recent case of the *Hibernia Savings Institution* v. *Luhn*, 34 S. C., 176.

The defendant company have, in their answer, asked for

affirmative relief in the foreclosure of the said mortgage, and I find that they are entitled to such relief. It is, therefore, adjudged, ordered, and decreed, that the master of this county do sell the premises mentioned in said mortgage, hereinafter described, at public auction, &c.

Mrs. Mixson appealed, on the following grounds: 1. That his honor erred in finding that the appellant was the principal debtor on the note and mortgage in question, and that her mother and her husband were her sureties; whereas he should have found that the husband was the principal debtor, and the wife and her mother the sureties. 2. That his honor erred in finding that the appellant borrowed the money upon representations made by her to the company, or to anybody for the company. 3. That his honor erred in finding that the appellant received any part of the borrowed money, or any benefit therefrom, and should have found that the same was received and enjoyed alone by the husband of appellant, and that the defendant company had knowledge explicit of the intended use by said husband, before the loan, this knowledge having been communicated to the agents making the loan. 4. That his honor erred in finding that the husband of Mrs. Mixson was the agent for her in the transaction between her and the defendant company. 5. That his honor erred in not granting the prayer of the complaint in declaring the mortgage null and void.

*Messrs. Henderson Bros.,* for appellant.

*Messrs. Croft & Chafee,* contra.

March 16, 1893. The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER. These two cases, though heard together on Circuit as well as in this court, are so different in the facts which they present, as well as in the law applicable thereto, that they should be considered separately. The first is an action to foreclose a mortgage on real estate given to secure the payment of a note for a horse, purchased from one R. A. Chafee, who assigned the note and mortgage to the plaintiff. There was no dispute as to the execution of the note and mort-

gage, or as to the assignment thereof, to the plaintiff; but the defence was, that the defendant, being a married woman, had no power to make the contract sought to be enforced. The mortgage was executed on the 19th of May, 1888, subsequent to the passage of the act of 1887, hereinafter more particularly referred to, and contained the following recital: that it was given to secure the payment of the purchase money of a horse, to which these words are added—"to secure the payment thereof, I declare it as my express intention to charge my separate estate, as hereinafter described." His honor, Judge Wallace, who heard the case on Circuit, says in his decree: "The evidence whether Frank M. Mixson, the husband of the defendant, bought the horse for himself, and had his wife to execute the paper as his surety, or whether the defendant was the real purchaser, is contradictory, but I am inclined to think that Frank M. Mixson, the husband, bought the horse for himself, and had his wife to give the mortgage as security—that such was the understanding at the time of the trade, and I so hold. But the mortgage is subsequent to the act of 1887 (19 Stat., 819), and declared upon the face that it was the express intent of the defendant to charge her separate estate to pay the note for which it was given. I, therefore, hold that it is binding upon the defendant, and that the plaintiff, who has bought the note and mortgage from R. A. Chafee, is entitled to judgment of foreclosure."

From this judgment defendant appeals upon the following grounds: 1st. Because his honor, having found that Chafee, the mortgagee, having notice and knowledge of the fact that the mortgage was not given for the benefit of the separate estate of the married woman, but for the debt of her husband, erred in not dismissing the complaint, notwithstanding the provisions in the act of 1887. 2d. That his honor erred in finding that the clause in the mortgage in question came up to the requirements of the act of 1887. The plaintiff, also, according to the proper practice, gave notice of exception to the finding of fact that the defendant was a surety of her husband on the contract for the sale of the horse.

In the first place, it seems to us at least doubtful whether

the Circuit Judge has found the fact assumed in the first ground of appeal, to wit: that Chafee knew that the debt secured by the mortgage was not a contract in reference to the separate estate of the defendant, but, on the contrary, was really the debt of her husband; for while he does find that the husband bought the horse for himself, and that the wife was really only a surety for him, yet he does not find—at least, not distinctly— that Chafee knew this at the time of the trade.

But waiving this, if the Circuit Judge was right, as we think he was, as to the construction of the act of 1887, then whether that fact was found becomes wholly immaterial. The act of 1887 was manifestly designed to effect some change in the previous law as to the contracts of married women, or at least in the construction which had been placed by the court upon such law. This court, by a series of decisions, which it is scarcely necessary to refer to here, as the question, in various forms, has been so recently considered by this court, had construed the law as it stood after the amendment of 1882, and before the passage of the act of 1887, as depriving a married woman of the *power* to make any contract except as to her separate estate; and hence, when an action was brought to enforce a contract purporting to have been made by a person laboring under such a disability, it was necessary for the plaintiff to show that such contract was one in reference to the separate estate of the married woman. But that if the married woman, at the time of making the contract in question, represented to the person with whom she was contracting that the contract was in reference to her separate estate, and, therefore, was such a contract as she had the power to make, then she would be estopped from afterwards denying the fact involved in such representation, upon the ground that it would be a fraud to allow her thus to deceive the person with whom she was contracting. And hence, if such representation was known, by the other party, to be untrue at the time the contract was entered into, there would be no estoppel, for the reason that the other party was not misled or deceived by a representation known by him to be false. In other words, a party proposing to enter into a contract with a married woman, knowing, as he

must be presumed to know, that under the law a married-woman had no power to make any contract, except as to her separate estate, was bound to ascertain that the proposed contract was of such a character, and if he was induced so to believe by the representations of the married woman, she could not afterwards be allowed to dispute such representations, unless it further appeared that the other party knew such representations to be untrue, and was not, therefore, misled into the belief that the contract was such an one as a married woman had the power to make.

This being the settled law, applicable to the contracts of married women, entered into between 1882 and 1887, the legislature, on the 23d of December in the latter year, enacted the statute under consideration, which is entitled "An act to declare the law relating to the separate estates of married women," which, in the first section, reads as follows: "All conveyances, mortgages, and like formal instruments of writing, affecting her separate estate, executed by a married woman, shall be effectual to convey or charge such separate estate, whenever the intention so to convey or charge such separate estate is declared in such conveyances, mortgages, or other instruments of writing." This act having been adopted in full view of the previous law upon the subject, was manifestly designed to effect a radical change in such previous law, not only by making it a question of *intention* instead of a question of *power*, but declaring how the intention should be conclusively manifested. For, under the old law, it was a question of *power*, and, until the fact was ascertained that the contract in question was such an one as a married woman was capable of making, no recovery could be had, no matter what might have been the *intention* of the married woman. But, under the act of 1887, the question was made one solely of *intention*, for the legislature then declared, in explicit terms, that "*all* conveyances, mortgages, and like formal instruments of writing, affecting her separate estate, executed by a married woman, *shall* be effectual to * * * charge her separate estate, *whenever* the *intention* so to * * * charge such separate estate is declared in such conveyances, mortgages, or other instruments of writing."

Whenever, therefore, we find a case in which a married woman has executed a mortgage of her separate estate, and has declared, in such mortgage, her intention to charge such separate estate, we are bound to make it, as the legislature declared it should be, effectual to charge her separate estate; and we have no right to inquire further into the matter. The fact that the legislature has subsequently seen fit, by the act of 1891 (20 Stat., 1121), to repeal the first section of the act of 1887, quoted above, and has again made it a question of *power* as to the class of contracts therein mentioned, cannot affect the question which we are called upon to determine. That question must be determined by the law as it stood at the time the contract here in question was entered into, without regard to the subsequent change in the law. We agree, therefore, with the Circuit Judge in the conclusion which he has reached as to the first case.

In the second case above stated, the action was brought by the plaintiff, Mrs. Ella Mixson, to enjoin the defendant from selling her land, under a power of sale contained in a mortgage held by the defendant company. The mortgage was executed on the 1st day of March, 1884, was signed by the plaintiff, her mother, Mrs. Sinia A. Wise, and F. M. Mixson, her husband, in the order stated, and was intended to secure the payment of a note for one thousand dollars, executed by the same parties, and on the same day, and signed in the same order. The Circuit Judge rendered judgment in favor of defendant, from which the plaintiff appeals upon the several grounds set out in the record, which, as it seems to us, impute error to the Circuit Judge only in his findings of fact. A careful examination of the testimony has satisfied us that, while there is a conflict as to some points, yet there is quite enough to sustain the conclusions reached by the Circuit Judge, and, therefore, under the well settled rule, his judgment should be sustained. The decree of the Circuit Judge, except the formal parts, together with plaintiff's exceptions, should be incorporated in the report of this case.

The judgment of this court is, that the jugment of the Circuit Court, in each of the cases above stated, be affirmed.